UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

vs.                                            Case No. 12-mc-50117

OMEGA SOLUTIONS, LLC,            HON. AVERN COHN

    Respondent.
_____/

### MEMORANDUM AND ORDER DENYING MOTION FOR PERMISSIVE INTERVENTION UNDER FED. R. CIV. P. 24(b) AND MOTION TO DISMISS (Doc. 6)

I.  Introduction

This is an action to enforce a summons issued by the Internal Revenue Service ("IRS").  The government has filed a petition to enforce the summons issued to Omega Solutions, LLC ("Omega").  The summons issued as part of an investigation into the tax liabilities of another company, Assured Source PEO LLC ("Assured Source") for the tax years of 2008-2010.  The petition alleges that Omega has possession of books and records relevant to the investigation of Assured Source.  Omega has refused to respond on the grounds that an order entered in state court permanently enjoins it from releasing the information.  As will be explained, Apex HR Services, LLC, People Plus Business Services, LLC, AS Holdings Group, LLC, Pinnacle HR Services, LLC, and AS South LLC (collectively "Apex") sued Omega in state court and obtained a permanent injunction against Omega.  The state court order states in relevant part:

> [Omega] is permanently enjoined from disclosing to the IRS the customer lists, customer information and other business information which would reveal the identity of the customers of [Apex]

Before the Court is Apex's motion for permissive intervention and to dismiss.[1] For the reasons that follow, the motion will be denied.

## II. Background

The interrelationship of Assured Source, Apex, and Omega as best gleaned from the parties' papers follows.

Assured Source, Apex, and Omega are commonly known as professional employer organizations ("PEO"s) also called employee leasing companies. Under their business model, a client company (employer) will contract with a PEO to manage its payroll, including tax withholdings, workman's compensation insurance, employee benefits, and similar human resources services. According to the IRS, PEOs may not always pay, or fully pay, the client/employer's withholding tax liability. The PEO business is fluid, with client companies frequently moving between PEO providers, particularly when tax authorities appear.

Assured Source ceased operations at the end of 2010, but continued to wind down its operations into early 2011. Assured Source was headquartered in Troy, Michigan and headed by James D'Iorio.

On January 2011, Apex was formed as a PEO. While Apex says that entities unrelated to Assured Source formed Apex, Apex entered into a contract with the then winding-down Assured Source for it to provide "backroom services for a short transitional period, through January 31, 2011." Apex also entered into some form of "consulting arrangement" with D'Iorio which Apex says has since been terminated.

---

[1] The IRS's petition to enforce the summons is the subject of a separate order.

Because Apex was new to the PEO business, it sought a "more permanent provider" of services. It found Omega. On January 31, 2011, it entered a one year contract with Omega to provides services for Apex's client companies. The contract contained a confidentiality clause restricting Omega's use of client company information. Because Omega was providing services for Apex's clients, Omega had Apex's client information.

On March 18, 2011, the IRS issued a summons to Apex. Although Apex says that the summons sought "Apex's client information," the summons actually seeks the following:

> -Copies of any contracts with James D'Iorio
> -Copies of any contracts with any and all former Assured Source Clients, and any sale agreements with Mr. D'Iorio or the Assured Source Companies and proof of any payments made to James D'Iorio and the Assured Source Companies

Apex has not complied with the summons. According to the government, the IRS informed Apex that the summons would be moot if it produce the requested information about the Assured Source clients. Apex has refused.

Similarly, on April 7, 2011, the IRS issued a summons to Omega. The summons seeks the following:

> Please supply a list of all clients the companies service and a statement as to from whom Omega takes direction in their Servicing agreements with Apex HR Services, People Plus and any other associated companies on a regular basis.

The summons states that it relates to the matter of Assured Source.

After the summonses were issued and just a few months into the Apex-Omega contract, Apex and Omega entered into a termination agreement, on April 25, 2011. The termination agreement, according to Apex, contains a similar confidentiality

provision.

On May 11, 2011, Apex sued Omega in Oakland County Circuit Court, essentially seeking enforcement of the confidentiality provisions in the parties' agreements. The IRS was not a party to the case, nor formally served, but it was made aware of the case by Omega. The IRS did not appear, intervene, or otherwise participate in the state court action.

On May 25, 2011, the state court issued a final order permanently enjoining Omega from disclosing information to the IRS, as stated above.

On June 23, 2011, the IRS issued a second summons to Omega, which seeks the following:

> Please supply the lists of clients including names and addresses that were serviced by, or on behalf of Omega for the following companies for the time periods May 2010 through dates of compliance with this summons.

It then lists all of the Apex and Assured Source companies.

On June 24, 2011, Omega informed the IRS that it would not comply with the summons due because of the state court injunction order.

Eventually, on February 1, 2012, the IRS filed this enforcement action against Omega, together with a petition and a request to show cause. Omega responded to the show cause request, essentially contending that, in its view, the state court injunction prevents it from disclosing the information. Omega, however, states that it is willing to respond to the summons but for the state court injunction. Omega also says this is not its fight and is caught in the middle of a dispute.[2] In reply to the show cause, the IRS

---

[2]The Court is mindful of Omega's unenviable situation.

4

contends that Omega should be directed to comply with the summons because the state court does not have the authority to enter a permanent injunction prohibiting the IRS from requiring Omega to produce the information called for by the summons.

On March 16, 2012, Apex filed the instant motion to intervene and to dismiss the summons.

On April 12, 2012, the Court held a status conference with the parties at which counsel for the IRS, Omega, and Apex appeared. The Court encouraged the parties, particularly Apex, to allow Omega to disclose the information to the IRS. The Court also suggested the IRS and Apex try to minimize the effects on Apex and its clients in the IRS obtaining the information. Apparently, those efforts were not successful.

### III.  Analysis

As an initial matter, even though Apex is not a "plaintiff," in seeking to intervene and in moving to dismiss the summons, Apex is for all practical purposes seeking to quash the subpoena. In that sense, Apex is attempting to challenge the enforcement of an IRS summons, as would a plaintiff. Thus, the Court assumes Apex has standing.

#### A.  Permissive Intervention

Apex has moved to permissively intervene under Fed. R. Civ. P. 24. Under Fed. R. Civ. P. 24(b)(1), a court may permit anyone to intervene who: "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(3) provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Initially, Fed. R. Civ. P. 81(a)(5) provides that "[t]hese rules [the Federal Rules of

Civil Procedure] apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." Thus, Fed. R. Civ. P. 81(a)(5) in general permits Apex to file a motion to intervene in this action.

However, the government argues that Apex has no right to intervene because the limiting language under Rule 81 "except as otherwise provided by statute" applies. This argument has merit.

It is clear that the government cannot be sued unless Congress has expressly and unequivocally waived the government's sovereign immunity by statute. United States v. Dalm, 494 U.S. 596, 608 (1990). An action to quash an IRS summons is a suit against the government. See McMillen v. United States Department of Treasury, 960 F.2d 187, 188 (1st Cir.1991) (waiver of sovereign immunity required to sue over IRS actions).

Under 26 U.S.C. § 7609, the IRS must serve anyone whose financial records are sought in a third-party summons with a notice copy of the summons. 26 U.S.C. § 7609(a)(1). Persons who are entitled to such notice may then intervene in any proceeding, including filing a petition a district court to quash the summons under section 7609(b)(2). One of the exceptions to the general rule is that notice is not required when a third-party summons is "issued in the aid of the collection of . . . an assessment made or judgment rendered against the person with respect to whose liability the summons is issued." 26 U.S.C. § 7609(c)(2)(D). Thus, a person who is not entitled to notice has no right to intervene or otherwise challenge the enforcement of a

summons.

The government argues that because the Omega summons which is the subject of this action was issued in aid of collection of Assured Source's tax liability, Apex was not entitled to notice of the action and therefore not able to challenge its enforcement. In support, the government cites Barmes v. United States, 199 F.3d 386 (7th Cir. 1999). In Barmes, the taxpayers petitioned to quash an IRS summons served on a third party bank where they had signature authority over the trust account which was the subject of the summons. The government moved to dismiss the petition arguing, as it does here, that because the summons was issued in the aid of collecting a tax liability, the taxpayers were not entitled to notice and therefore not able to challenge the summons. As the court framed the argument, "if notice is not mandated, neither is a petition to quash authorized." Barmes, 199 F.3d at 388. The Court agrees. Section 7609(c) clearly states that notice of the summons is not required where the summons is issued "in the aid of collection" of a tax liability. Like the taxpayers in Barmes, Apex here has no right to notice of the summons, and therefore no right to challenge its enforcement, through intervention or otherwise.

Apex cites Donaldson v. United States, 400 U.S. 517 (1971) in which a taxpayer moved to intervene in a petition by the government to enforce a third party summons. While not contesting that a party could move under Rule 24 to intervene as a general matter, the court denied the motion to intervene on the grounds that the taxpayer did not have a legally protected interest. Thus, Donaldson does not support Apex's position.

Apex also cites United States v. Sidley Austin Brown & Wood LLP, No. 03 C 9355, 2004 WL 905930 (Apr. 28, 2004). In Sidley Austin, the IRS issued a summons to

7

a former partner in Sidley Austin to obtain the names of former clients of the firm in connection with an investigation into the organization and sale of tax shelters. The district court permitted 40 former clients to intervene as "Does" to challenge the summons as ambiguous. The IRS moved for reconsideration. The government argued that the Does lacked standing because they had no interest in the enforcement of the summons. The district court rejected that argument.

Apex's reliance on Sidley Austin is misplaced. The summons in that case was not in the aid of tax collection, and therefore not subject to the notice exception which applies here.

### B.  Enforcement of the Summons

Even assuming that Apex can challenge the summons, the government contends that it has meet the requirements for enforcement. Apex disagrees and has moved to dismiss the summons. The Court agrees with the government.

"In order to ensure the proper determination of tax liability, Congress 'has endowed the IRS with expansive information-gathering authority.' " United States v. Monumental Life Ins. Co., 440 F.3d 729, 732 (6th Cir. 2006). "Under [26 U.S.C.] § 7602, the Commissioner of the IRS is authorized, '[f]or the purpose of ascertaining the correctness of any return . . . [t]o examine any books, papers, records, or other data which may be relevant or material to such inquiry' and to summon any person to produce such documents." Id. at 733 (citations omitted). However, "[t]he courts, and not the IRS, are authorized to enforce this summons power." Id. "[F]or the government to establish a prima facie case for enforcement, it must demonstrate that (1) the investigation has a legitimate purpose, (2) the information summoned is relevant to that

purpose, (3) the documents sought are not already in the IRS's possession, and (4) the procedural steps required by the tax code have been followed." Id. (citing United States v. Powell, 379 U.S. 48, 85 S.C. 248, 13 L.Ed.2d 112 (1964)). "This requisite showing is generally made by the submission of the affidavit of the agent who issued the summons and who is seeking enforcement." United States v. Will, 671 F.2d 963, 966 (6th Cir. 1982) (affirming enforcement of summons over taxpayer's objection that summons was issued in bad faith).

"Once the government has made this prima facie showing, the burden shifts to the party being summoned to either disprove the elements of the prima facie case or 'demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process.' " Monumental Life, 440 F.3d at 733 (quoting United States v. Davis, 636 F.2d 1028, 1034 (5th Cir. 1981)).

Here, IRS Revenue Officer Deborah Black provided a declaration, which may be substituted for an sworn affidavit under 28 U.S.C. § 1746, with the petition to enforce the IRS summons at issue. Black's declaration establishes that her investigation is being conducted for a legitimate purpose, i.e., collection of Assured Source PEO LLC's tax liability (¶¶ 2-3); that the summoned materials are relevant to her investigation (¶ 12); that the information sought is not already in the possession of the IRS (¶ 10); and that the administrative steps required by the Code have been followed (¶ 11).

Once the IRS has made its prima facie case, the burden shifts to the party contesting the summons to disprove one of the four elements or to convince the court that enforcement of the summons would constitute an abuse of the court's process. Powell, 379 U.S. at 58; Will, 671 F.2d at 966. Each of these elements is discussed in

turn below.

1. Legitimacy

It is undisputed that the IRS is conducting an investigation into collection of the tax liability of Assured Source. Title 26 U.S.C. § 7602(a) authorizes the IRS to use its administrative summons power to, among other things, "examine any books, papers, records, or other data which <u>may be</u> relevant or material to an inquiry" into collection of a tax liability. 26 U.S.C. § 7602(a)(1)(emphasis added).

The records sought from Omega, which it received from Apex, contain information regarding former clients of Assured Source. Further, as Apex is well aware, the IRS has a tax lien on Assured Source's client lists. Because Omega is in possession of records that may be relevant to the IRS's inquiry into the collection of Assured Source's tax liability, the summons issued to Omega is for a legitimate purpose.

Apex, however, argues that the IRS served the summons at issue on Omega for an illegitimate purpose, "to force this Court's hand into overturning a previously-decided state court issue; i.e., the permanent injunction." Apex Memorandum, Doc. 6, at p. 9. It argues that because the IRS did not intervene in the state court action, it may not seek to enforce the summons served on Omega in federal court. This argument does not carry the day.

First, the IRS was not a party to the state court action and Apex, according to the government, did not effect proper service of that suit on the IRS. Thus, the IRS was under no obligation to intervene.

Second, under the Anti-Injunction Act, 26 U.S.C. § 7421, a state court had no

jurisdiction to enjoin the IRS's efforts to investigate the collection of Assured Source's tax liability, whether or not the IRS was a party to the action seeking the injunction. See Dickens v. United States, 671 F.2d 969 971 (6th Cir. 1982). Apex knows this. As the government points out, in Apex's papers filed in state court action seeking a preliminary injunction, it noted that "the Federal District Court has the sole authority to determine whether [an IRS summons] may be enforced, conditionally enforced or quashed." See Omega's Response to Order to Show Cause (Omega's Response), Doc. 3, Exhibit B, Verified Complaint for Preliminary Injunction (Verified Compl.), at ¶ 59. Acknowledging that the IRS had not, at that point, filed an enforcement action against Omega, Apex told the state court that "an injunction would only maintain, as best as possible, the 'status quo.'" Verified Compl. at ¶ 58. Apex also argued to the state court that if the preliminary injunction was granted, "the IRS has a more than adequate statutory remedy in Federal Court should it choose to seek to enforce the Summons" and that "the public interest would be served by [the requested] injunction because as it will require the IRS to seek enforcement of the Summons; thereby allowing the Federal District court to determine if the Summons [is enforceable]." Omega's Response, Doc. 3, Exhibit B5, Brief in Support of Verified Motion for Temporary Restraining Order an/or Order to Show Cause for Preliminary Injunction, at pp. 3, 19. Thus, Apex acknowledged in state court that a federal court, not a state court, is the only court with the power to determine whether an IRS summons is enforceable. Apex's contention that the IRS's efforts to enforce the summons served on Omega are an attempt to circumvent the state court case is not persuasive.

Apex argues that the Anti-Injunction Act did not bar the state court's May 25,

11

2011 injunction because "[t]he Act was specifically enacted to prevent courts from enjoining the act of collection" and the state court injunction did not prohibit the assessment or collection of taxes. This contention lacks merit. As the Sixth Circuit has observed, the Anti-Injunction Act is not limited to suits aimed at the specific act of assessment or collection. Dickens, 671 F.2d at 971. Rather, "[t]he Anti-Injunction Act 'is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes." Id. (quoting Blech v. United States, 595 F.2d 462, 466 (9th Cir. 1979)). Clearly, the state court injunction has inhibited the IRS from obtaining information from Omega which is aimed at collecting taxes from Assured Source. The Anti-Injunction Act prohibits such action.

Overall, the summons was issued for a legitimate purpose.

### 2.  Relevance

As noted above, § 7602(a) authorizes the IRS to use the administrative summons power to, among other things, "examine any books, papers, records, or other data which <u>may be</u> relevant or material to an inquiry" into collection of a tax liability. 26 U.S.C. § 7602(a)(1) (emphasis added). The Supreme Court has defined the term "relevant," as used in § 7602(a), very broadly:

> As the language of § 7602 clearly indicates, an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court. Cf. Fed. Rule Evid. 401. The language "may be" reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. As a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS, see United States v. Powell, 379 U.S. 48, 57, 85 S.C. 248, 13 L.Ed.2d 112 (1964); the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary

sense.

United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984).

Apex does not dispute that its client lists identifies former clients of Assured Source. Indeed, this is what has promoted Apex to move to intervene and dismiss the summons - it does not want to lose clients, whether former Assured Source clients or not, who will be contacted by the IRS. Although Apex has asserted that it did not enter into an agreement with Assured Source to purchase its customer, customer contracts or customer lists, it has not denied that the Assured Source client lists were transferred to Apex, and that many of Assured Source's former clients then contracted with Apex to handle their human resources operations. Thus, Apex likely would have possession of, and provided Omega, the clients' information. Even if not every client on the client list summonsed by the IRS was previously associated with Assured Source, the IRS need only show that the information sought "may be relevant" to the legitimate investigation for collection of Assured Source's tax liability. Tiffany, 469 U.S. at 323, citing Powell, 379 U.S. at 57. The IRS has done that. Moreover, the decision of how many, and which, former clients of Assured Source to contact is one for the IRS, not Apex.

Apex also contends that because the IRS is investigating collection of Assured Source's tax liability for 2009 and 2010, and because Omega did not have a relationship with Apex before February 2011 and never had a relationship with Assured Source, that the summoned information is not relevant. Even if true, Apex does not deny that the summoned client lists contain the names of clients for whom Assured Sources provided human resource services during the relevant years. Thus, the timing of the relationships has no impact on whether the information sought is relevant.

Apex further says that the IRS should be required to obtain the information it seeks directly from the taxpayer from whom it is attempting to collect the tax liability rather than issuing summonses to third parties, like Omega.  This argument misses the mark.  The Supreme Court has "never held, however, that the IRS must conduct its investigations in the least intrusive way possible. Instead, the standard is one of relevance." Tiffany, 469 U.S. at 323 (1985), citing Powell, 379 U.S. at 57.  This statement is particularly true here where most of Apex's arguments boil down to it does not like the way in which the IRS has sought the information.  Moreover, no one disputes that Assured Source is no longer in business and that Apex has refused to produce the Assured Source client lists.  The IRS naturally looked to Omega.  Overall, the IRS has demonstrated the relevance of the records it seeks and none of Apex's contentions to the contrary are persuasive.

### 3. Non-Possession

Black has stated that the information sought in the Omega summons is not already in the possession of the IRS.  Apex does not contend otherwise.  Thus, this factor has been satisfied.

### 4. Regulatory Compliance

Apex says that the IRS's use of a third-party summons in this case is "highly irregular."  However, other than bald assertions, it has not identified any procedural irregularity that renders unenforceable the summons served on Omega.  While Apex says that the IRS is acting in bad faith, this argument lacks any support.  What is clear is that Apex does not want the IRS contacting its clients.  The fact that this may hurt Apex's business is not a legitimate ground to dismiss the summons issued to Omega.

In a supplemental filing, Apex says that after the status conference the IRS issued a Notice of Levy against Assured Source in the amount of $5,976.07.  The notice is attached to Apex's supplemental filing.  It appears that Apex is asserting that the fact that this amount is low somehow is evidence of the IRS's bad faith, although it cites no authority for such a proposition.  The Court is not persuaded otherwise.

IV.  Conclusion

For the reasons stated above, Apex's motion to intervene and to dismiss is DENIED.

SO ORDERED.


    S/Avern Cohn
    AVERN COHN
    UNITED STATES DISTRICT JUDGE

Dated:  July 5, 2012


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 5, 2012, by electronic and/or ordinary mail.

    s/Julie Owens
    Case Manager, (313) 234-5160